## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  **ROPER HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No.**   22-cv-187-KEW |
| (2)  **McCURTAIN COUNTY JAIL TRUST,** ) | |
| ) | |
| (3)  **BOARD OF COUNTY** ) | |
| **COMMISSIONERS OF McCURTAIN** ) | |
| **COUNTY, OKLAHOMA,** ) | |
| ) | |
| (4)  **SCOTT McCLAIN, individually** ) | **JURY TRIAL DEMANDED** |
| **and in his official capacity as McCurtain** ) | **ATTORNEY LIEN CLAIMED** |
| **County Jail Administrator;** ) | |
| ) | |
| (5)  **KEVIN CLARDY, individually and in** ) | |
| **and in his official capacity as McCurtain** ) | |
| **County Sheriff; and** ) | |
| ) | |
| (6)  **RICHARD WILLIAMSON;** ) | |
| ) | |
| (7)  **ALICIA MANNING;** ) | |
| ) | |
| (8)  **BRANDON STANSBURY;** ) | |
| ) | |
| (9)  **JOE EBERT; and** ) | |
| ) | |
| (10) **CODY JOHNSON;** ) | |
| **in their official and individual capacities,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

Plaintiff Roper Harris ("Harris" or "Plaintiff"), for his action against Defendants McCurtain County Jail Trust ("MCJT"), the Board of County Commissioners of McCurtain County, Oklahoma ("BOCC"), McCurtain County Jail Administrator Scott McClain ("McClain"), McCurtain County Sheriff Kevin Clardy ("Clardy"), Deputy Richard Williamson ("Williamson"),

Deputy Alicia Manning ("Manning"), and McCurtain County Jail workers Brandon Stansbury ("Stansbury"), Joe Ebert ("Ebert"), and Cody Johnson ("Johnson", collectively "Defendants"), hereby alleges as follows:

**PARTIES, JURISDICTION & VENUE**

1.  This action arises under 42 U.S.C. § 1983; the United States Constitution, Amendments IV and XIV; the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51 § 151 *et seq.*; and the Oklahoma Constitution.

**Roper Harris**

2.  Plaintiff Roper Harris is a resident of the Town of Broken Bow, McCurtain County, State of Oklahoma.

3.  On or about September 29, 2021, Plaintiff submitted a *Notice of Claim* to the clerk of the McCurtain County Sheriff ("MCS") pursuant to OKLA. STAT. tit. 51 § 156(D).

4.  Plaintiff's *Notice of Claim* was constructively denied on or about December 28, 2021.

5.  Accordingly, with respect to Plaintiff's tort-based, state law claims against MCS and its individual employees who were acting within the scope of their employment (which stem from the conduct referenced in his *Notice of Claim*), Plaintiff has exhausted all administrative remedies.

6.  This *Complaint* is being filed on June 27, 2022 (the first day that the Clerk's Office is accessible after Sunday, June 26, 2022, *i.e.*, the 180th day following the constructive denial of Plaintiff's *Notice of Claim*), and is therefore timely pursuant to OKLA. STAT. tit. 51 § 157(B) and FED.R.CIV.P. 6(a)(3)(A).

**McCurtain County Jail Trust**

7.  The McCurtain County Jail Trust is a public trust organized under OKLA. STAT. tit. 60 §

176 *et seq.*

8.  MCJT employs the staff at the McCurtain County Jail. ("MCJ")

9.  MCJT is responsible for the operational aspects of MCJ, including the training and supervision of MCJ staff.

10. MCJT is liable under state law for the actions of its employees under a theory of *respondeat superior* consistent with the common law principles set forth by the Oklahoma Supreme Court in *Baker v. Saint Francis Hosp.*, 126 P.3d 602, made applicable to MCJT here pursuant to the decision of the Oklahoma Supreme Court in *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013).

11. Pursuant to Art. VI, ¶ 1 of the *Trust Indenture Creating the McCurtain County Jail Trust* (the "Trust Indenture"), which was filed with the McCurtain County Clerk on August 31, 1998, and duly recorded in Book 622, Page 467, "[t]he purposes of [MCJT] are," *inter alia*:

    > To assist the Beneficiary … in making the most efficient use of all of their economic resources and powers in accord with the needs and benefit of the State of Oklahoma and the Beneficiary … specifically including, but not limited to, the power … to own, operate and manage jails, prisons, correctional and related facilities. . .

12. In turn, under Art. III of the Trust Indenture, the designated "Beneficiary" is McCurtain County, "acting by and through its Board of County Commissioners."

13. Pursuant to Art. VII, ¶ 12 of the Trust Indenture, "[t]he Trustees [of MCJT] serve at the pleasure of," and "may be removed at will" by, "the appointing County Commissioners" (*i.e.*, the three individuals who together comprise the Board of County Commissioners of McCurtain County, Oklahoma).

14. Pursuant to Art. VIII of the Trust Indenture, the Trustees of MCJT are empowered and have the duty, *inter alia*:

    (1)   "To manage and conduct the business and affairs" of the MCJT;

3

* * *

(3)  To "operate and maintain all necessary and convenient county correction and detention facilities";

(4)  "To contract for employees, sufficient to maintain and operate the criminal justice facilities" of the MCJT; and

* * *

(10)  "To do any and all other things necessary and proper in the management and operation of the [MCJT] for the purpose of promoting the establishment and maintenance of an effective corrections and detention system…"

15.  At all times during which Plaintiff was detained, incarcerated, or otherwise held at MCJ, MCJT was responsible, *inter alia*, for providing medical supervision and services to Plaintiff, and/or for taking all reasonable steps to ensure that Plaintiff was afforded timely access to any necessary medical services.

16.  At all times relevant hereto, MCJT was responsible, *inter alia*, for creating and implementing policies, practices, and protocols governing the provision of medical care to MCJ inmates and detainees, and for training and supervising MCJ workers in such regard.

17.  At all times during which Plaintiff was detained, incarcerated, or otherwise held at MCJ, MCJT was responsible, *inter alia*, for overseeing Plaintiff's health and well-being, for preventing MCJ personnel from using constitutionally excessive force upon Plaintiff, for preventing Plaintiff from being subjected to any unjustifiably high risk of harm that was known and/or so obvious that it should have be known, and for responding reasonably in the face of any such force or risk.

**Kevin Clardy / McCurtain County**

18.  Defendant Kevin Clardy is the Sheriff of McCurtain County, Oklahoma, residing in McCurtain County, Oklahoma, and at all times relevant hereto, acting under color of state

law.

19. Plaintiff's claims for relief in this *Complaint* are brought, *inter alia*, against Clardy in his official capacity as McCurtain County Sheriff.

20. "A claim against a government actor in his official capacity is essentially another way of pleading an action against the county … he represents." *Revilla v. Glanz*, 7 F.Supp.3d 1207, 1217 (N.D.Okla. 2014).

21. Thus, Plaintiff suing McCurtain County Sheriff Kevin Clardy is the functional equivalent of suing McCurtain County. *Id.*; *Moran v. Unknown Nurse #1*, 2015 WL 9593622 *1 (N.D.Okla.) (holding "a suit against the sheriff in his official capacity is the same as naming the county"); *Lynch v. Bd. of County Comm'rs of McCurtain Co.*, U.S. Dist. Ct. (E.D.Okla.) Case No. 16-CV-247-JHP, Dkt. #22, p. 9 (in which the Board of County Commissioners of McCurtain County expressly conceded that the McCurtain County Sheriff "does not enjoy a separate legal existence from McCurtain County").

22. Further, a county "may be held liable for an act it has officially sanctioned, **or** for the actions of an official with final policymaking authority." *Revilla v. Glanz*, 7 F.Supp.3d 1207, 1217 (N.D.Okla. 2014).

23. As McCurtain County Sheriff, Clardy is a county "official with final policymaking authority." *See id.* at 1218; *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995).

24. The Board of County Commissioners of McCurtain County is the chief administrative body for McCurtain County (the "County"), a political subdivision of the State of Oklahoma, with its principal place of business located in the City of Idabel, McCurtain County, State of Oklahoma.

25. Pursuant to Okla. Stat. tit. 57 § 41, "**Every county**, by authority of the board of county

commissioners and at the expense of the county, **shall have a jail** or access to a jail in another county **for the safekeeping of prisoners** lawfully committed." (emphasis added).

26. McCurtain County must discharge its responsibilities to the McCurtain County Jail in a constitutional manner.

27. Thus, BOCC is obligated to conduct itself in a constitutional manner with respect to any actions that it takes and/or responsibilities it discharges pertaining to MCJ.[1]

28. Further, BOCC is obligated to conduct itself in a constitutional manner with respect to any actions that it takes and/or responsibilities it discharges through McCurtain County Sheriff personnel.

29. At all times during which Plaintiff was in the legal custody of MCS (*i.e.*, during and immediately following the arrest of Plaintiff by MCS), the County was responsible, *inter alia*, for preventing MCS personnel from using constitutionally excessive force upon Plaintiff, and for ensuring that any MCS personnel who present for and/or participated in the arrest of Plaintiff took reasonable steps to protect Plaintiff from being subjected to constitutionally unreasonable/excessive force at the hands of any other law enforcement officer(s).

30. At all times during which Plaintiff was detained, incarcerated, or otherwise being held at MCJ,  the County was, *inter alia*, ultimately responsible for ensuring that that Plaintiff was afforded timely access to any necessary medical services.

---

[1]      In an abundance of caution, for the claims based on the constitutional violations to which Plaintiff was subjected while housed at the McCurtain County Jail, Plaintiff has named both the McCurtain County Jail Trust **and** the Board of County Commissioners of McCurtain County, Oklahoma.  In the event this Court determines that Plaintiff's claims against MCJT may not be simultaneously asserted against BOCC, then Plaintiff would request leave to file a curative amendment narrowing his claims against BOCC to focus solely upon the tortious and unconstitutional acts of MCS (*i.e.*, non-jail) personnel.

31. At all times relevant hereto, the County was responsible, *inter alia*, for supervising MCJT's creation and implementation of policies, practices, and protocols governing the provision of medical care to MCJ inmates and detainees, and for ensuring that MCJT was properly training and supervising its employees in such regard.

32. At all times during which Plaintiff was detained, incarcerated, or otherwise being held at MCJ,  the County was responsible, *inter alia*, for ensuring that MCJT was preventing (or taking all reasonable steps in an effort to prevent) jail personnel from using constitutionally unreasonable/excessive force upon Plaintiff, protecting Plaintiff from being subjected to an unjustifiably high risk of harm that was known to jail personnel (or so obvious to them that it should have been known), and responding reasonably in the face of any such force or risk.

## MCJ Administrator Scott McClain

33. Defendant Scott McClain is, upon information and belief, a resident of McCurtain County, Oklahoma.

34. At all times relevant hereto, McClain worked at MCJ and held the position of Administrator.

35. At all times relevant hereto, McClain was acting under color of state law.

36. At all times relevant hereto, McClain was responsible, *inter alia*, for overseeing Harris' health and well-being, for assuring the Harris' medical/health needs were met, for preventing Harris from being subjected to constitutionally unreasonable/excessive force, for preventing Harris from being subjected to any unjustifiably high risk of harm that is known and/or so obvious that it should be known, and for responding reasonably in the face of any such risk.

**Richard Williamson**

37. Defendant Richard Williamson is, upon information and belief, a resident of McCurtain County, Oklahoma.

38. At all times relevant hereto, Williamson held the position of Deputy with MCS, and carried out the duties of such position (in whole or in part).

39. At all times relevant hereto, Williamson was acting under color of state law.

40. During the time of the events upon which Plaintiff's claims for relief are based, Williamson was, *inter alia*, prohibited from using constitutionally unreasonable/excessive force upon Plaintiff, and obligated to take reasonable steps to prevent any other officer from using, or continuing to use, constitutionally unreasonable/excessive force upon Plaintiff in his presence (to the extent Williamson had a sufficient opportunity to observe such behavior and to intervene).

**Alicia Manning**

41. Defendant Alicia Manning is, upon information and belief, a resident of McCurtain County, Oklahoma.

42. At all times relevant hereto, Manning held the position of Investigator with MCS, and carried out the duties of such position (in whole or in part).

43. Alternatively, at all times relevant hereto, Manning held the position of Captain with MCS, and carried out the duties of such position (in whole or in part).

44. At all times relevant hereto, Manning was acting under color of state law.

45. During the time of the events upon which Plaintiff's claims for relief are based, Manning was, *inter alia*, prohibited from using constitutionally unreasonable/excessive force upon Plaintiff, and obligated to take reasonable steps to prevent any other officer from using, or

continuing to use, constitutionally unreasonable/excessive force upon Plaintiff in her presence (to the extent Manning had a sufficient opportunity to observe such behavior and to intervene).

**Brandon Stansbury**

46. Defendant Brandon Stansbury is, upon information and belief, a resident of McCurtain County, Oklahoma.

47. At all times relevant hereto, Stansbury worked at MCJ as a jailer/detention officer.

48. At all times relevant hereto, Stansbury was acting under color of state law.

49. During the time of the events upon which Plaintiff's claims for relief are based, Stansbury was partially responsible, *inter alia*, for overseeing Harris' health and well-being, for assuring the Harris' medical/health needs were met, for preventing Harris from being subjected to constitutionally unreasonable/excessive force, for preventing Harris from being subjected to any unjustifiably high risk of harm that is known and/or so obvious that it should be known, and for responding reasonably in the face of any such risk.

**Joe Ebert**

50. Defendant Joe Ebert is, upon information and belief, a resident of McCurtain County, Oklahoma.

51. At all times relevant hereto, Ebert worked at MCJ as a jailer/detention officer.

52. At all times relevant hereto, Ebert was acting under color of state law.

53. During the time of the events upon which Plaintiff's claims for relief are based, Ebert was partially responsible, *inter alia*, for overseeing Harris' health and well-being, for assuring the Harris' medical/health needs were met, for preventing Harris from being subjected to constitutionally unreasonable/excessive force, for preventing Harris from being subjected

to any unjustifiably high risk of harm that is known and/or so obvious that it should be known, and for responding reasonably in the face of any such risk.

**Cody Johnson**

54. Defendant Cody Johnson is, upon information and belief, a resident of McCurtain County, Oklahoma.

55. At all times relevant hereto, Johnson worked at MCJ as a jailer/detention officer.

56. At all times relevant hereto, Johnson was acting under color of state law.

57. During the time of the events upon which Plaintiff's claims for relief are based, Johnson was partially responsible, *inter alia*, for overseeing Harris' health and well-being, for assuring the Harris' medical/health needs were met, for preventing Harris from being subjected to constitutionally unreasonable/excessive force, for preventing Harris from being subjected to any unjustifiably high risk of harm that is known and/or so obvious that it should be known, and for responding reasonably in the face of any such risk.

58. Upon information and belief, Defendants McClain, Clardy, Williamson, Manning, Stansbury, Ebert, and Johnson personally participated in the constitutional deprivations set forth by Plaintiff hereinbelow.

59. As such, Plaintiff is permitted to pursue claims under 42 U.S.C. § 1983 against each such Defendant in his or her capacity as an individual. *See generally Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

60. In addition, or in the alternative, to the allegations below that Defendants McClain, Clardy, Williamson, Manning, Stansbury, Ebert, and Johnson were acting under color of state law, such Defendants, or any them, acted outside the scope of his/her/their employment in by engaging in willful, wanton, intentional, malicious, and/or bad faith conduct that was a

proximate cause of Harris suffering physical injury and/or mental distress, the worsening of his condition, and other harms for which damages may be recoverable.

61. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. §1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

62. The jurisdiction of this Court is also invoked under 28 U.S.C. §1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

63. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

64. Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

65. On September 15, 2021, at approximately 8:30 p.m., Defendants Kevin Clardy, Richard Williamson, and Alicia Manning arrested Plaintiff Roper Harris at his place of residence, 100 Oakwood Drive, Apt. #34 in Broken Bow, Oklahoma.

66. After handcuffing Harris, and despite the fact that Harris was not exhibiting any physical (or otherwise meaningful) resistance, Clardy, Williamson, and Manning used constitutionally unreasonable, excessive, and unnecessary force upon Harris.

67.   Additionally and/or alternatively, Clardy, Williamson, and/or Manning failed to intervene to prevent and/or stop each other from using excessive and unreasonable force upon Harris.

68.   Following Harris' arrival at the McCurtain County Jail the evening of September 15th, and until Harris' release the following day at approximately 12:26 p.m., Scott McClain (whose stepdaughter, Chelsea Fuller, is the mother of Harris' minor child), Brandson Stansbury, Joe Ebert, Cody Johnson, and/or other McCurtain County Jail workers who are presently unidentified:

   (a)   themselves used constitutionally unreasonable, excessive, and unnecessary force upon Harris;

   (b)   enlisted, encouraged, and permitted other jail inmates (including Jordan Bryant and Kolby Watson) to physically attack and beat Harris without cause or provocation on the part of Harris;

   (c)   failed to intervene to prevent and/or stop the attack(s) upon Harris by other inmates and/or the use of unreasonable force by other McCurtain County Jail workers; and/or

   (d)   failed to provide medical attention and/or refused to permit the timely administration thereof after Harris communicated his need for such attention and/or after the McCurtain County Jail workers (including, without limitation, those named above) knew, or should have known, that Harris was in need of medical attention.

69.   Additionally or alternatively, the use of force upon Harris by the above-identified individuals, or any of them, was neither a good faith effort to restrain Harris nor necessary to maintain control of Harris, and/or such individuals, or any of them, engaged in the above-

described conduct maliciously, sadistically, for the very purpose of causing harm to Harris, and/or knowing that such conduct would result in Harris suffering serious harm.

70. MCS has a long-standing culture and practice of disregarding its written policies.

71. Likewise, MCJT has a long-standing culture and practice of disregarding its written policies.

72. MCS has a history of permitting its personnel to engage in unnecessary, unreasonable and excessive force on arrestees who pose no threat.

73. Likewise, MCJT has a history of permitting its personnel to engage in unnecessary, unreasonable and excessive force on MCJ detainees, inmates, and other prisoners who pose no threat.

74. MCS also has a long-standing culture, practice, and history of training and/or permitting its law enforcement officers to maintain secrecy and/or to falsify reports regarding such abuses.

75. Similarly, MCJT has a long-standing culture, practice, and history of training and/or permitting MCJ personnel to maintain secrecy, to abuse MCJ detainees and inmates in the "blind spots" of the jail (*i.e.*, those areas over which there is no camera surveillance), and/or to falsify reports regarding such abuses.

76. MCJT has a long-standing culture, practice, and history of deliberate indifference toward the serious medical needs of MCJ inmates, detainees, and other prisoners (*e.g.,* delaying, denying, or otherwise interfering with the treatment of an inmate's serious medical needs despite being aware that such conduct would likely expose the inmate to a substantial risk of serious harm).

77. The failure of Defendants MCJT, McClain, Stansbury, Ebert, and Johnson to take reasonable measures to guarantee Harris's safety and well-being described hereinabove -- including their deliberate indifference to Harris's serious medical needs, their deliberate decision to expose Harris to the substantial risk of being brutally assaulted by homicidal and/or violent inmates (a risk which was significantly exacerbated by Harris' obviously weakened state following the unprovoked use of constitutionally excessive force upon him), the failure to train and/or supervise MCJ jailers/detention officers, and/or their use of constitutionally-excessive force -- proximately caused Harris to endure physical and mental pain and suffering, the worsening of his condition, and other injuries and harms for which damages are recoverable.

78. The above-summarized acts and omissions were in furtherance of, and consistent with, the policies, customs, and practices that the McCurtain County Jail Trust and McCurtain County Sheriff had previously created, implemented, observed, maintained, and/or tolerated (or in which MCJT and MCS had otherwise previously acquiesced).

79. Whether formal or informal, the above-referenced policies, customs, and practices of the McCurtain County Sheriff (*i.e.*, McCurtain County) and the McCurtain County Jail Trust were well-settled and permanent.

80. These prior instances of unconstitutional mistreatment put BOCC and MCJT on notice that MCJ administrators, supervisors, detention officers, medical staff, and/or other personnel were inadequately trained, that MCJ detention workers subjected inmates to unnecessary and constitutionally-excessive force, and that the medical care and inmate supervision provided by MCJ workers was wholly inadequate, thus placing inmates like Harris at excessive risk of harm.

81. BOCC and MCJT, however, in deliberate indifference to the rights of pretrial detainees

like Harris, failed to alleviate the above-referenced risks, which were known and obvious.

### FIRST CAUSE OF ACTION:
### UNLAWFUL USE OF EXCESSIVE FORCE
### IN VIOLATION OF U.S. CONST. AMEND. IV
### (42 U.S.C. § 1983)

For his First Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

82.  The use of force on Plaintiff by Defendants Clardy, Williamson, and Manning was not a good faith effort to restrain Plaintiff or otherwise to maintain control.

83.  Additionally or alternatively, said Defendants' use of force on Plaintiff was done maliciously, sadistically, and/or or the very purpose of causing harm to Plaintiff.

84.  Defendants Clardy, Williamson, and Manning, or any of them, knew or should have known that the excessive physical force used against Plaintiff would result in Plaintiff suffering serious harm.

85.  At the time said Defendants used excessive physical force on Plaintiff, Plaintiff was not exhibiting any meaningful physical resistance to Defendants.

86.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, Plaintiff was restrained to such a degree that he was physically incapable of meaningfully resisting said Defendants.

87.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, there was no need for the application of such force.

88.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, the threat to said Defendants' safety posed by Plaintiff was minimal or nonexistent.

89.    At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, Defendants did not reasonably perceive Plaintiff as posing some threat warranting the application of force.

90.    Said Defendants' effort to temper the severity of a forceful response was grossly inadequate.

91.    Plaintiff unnecessarily suffered pain and injury as a direct and proximate result of the force used by Defendants Clardy, Williamson, and Manning.

92.    In using force against Plaintiff as set forth above, Defendants Clardy, Williamson, and Manning were acting under color of state law.

93.    The acts by each of the three above-referenced Defendants were incidental to some service being performed for his or her employer.

94.    Alternatively, the acts by each of the three above-referenced Defendants arose out of an emotional response to actions being taken for his or her employer.

**WHEREFORE**, for his First Cause of Action, Plaintiff Roper Harris prays that this Court enter judgment in his favor and against Defendants Kevin Clardy, Richard Williamson, and Alicia Manning, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for punitive damages against Defendants Clardy, Williamson, and Manning, prejudgment interest, the recovery from said Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

## SECOND CAUSE OF ACTION:
### FAILURE TO INTERVENE
#### TO PREVENT OR STOP THE USE OF EXCESSIVE FORCE
#### IN VIOLATION OF U.S. CONST. AMEND. IV
#### (42 U.S.C. § 1983)

For his Second Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further state:s

95.  Defendants Clardy, Williamson, and Manning, or any of them, were present at the time excessive physical force was being used against Plaintiff by MCS personnel.

96.  Defendants Clardy, Williamson, and Manning, or any of them, observed or were otherwise aware of the excessive physical force being used against Plaintiff by MCS personnel.

97.  Defendants Clardy, Williamson, and Manning, or any of them, had a reasonable opportunity to intervene to prevent or stop the excessive physical force from being used against Plaintiff by MCS personnel.

98.  Defendants Clardy, Williamson, and Manning, or any of them, failed to intervene to prevent or stop the excessive physical force from being used against Plaintiff by MCS personnel.

99.  Plaintiff unnecessarily suffered pain and injury as a result of the aforementioned failure to intervene on the part of Clardy, Williamson, and/or Manning.

**WHEREFORE**, for his Second Cause of Action, Plaintiff Roper Harris prays that this Court enter judgment in his favor and against Defendants Kevin Clardy, Richard Williamson, and Alicia Manning, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for punitive damages against Defendants Clardy, Williamson, and Manning, prejudgment interest, the recovery from said

Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

### THIRD CAUSE OF ACTION:
### FAILURE TO ADEQUATELY TRAIN, SUPERVISE, AND/OR CONTROL
### LAW ENFORCEMENT PERSONNEL
### (42 U.S.C. § 1983)

For his Third Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states upon information and belief:

100. Defendants Williamson and Manning, or either of them, exceeded constitutional limitations on the use of force against Plaintiff.

101. The above-referenced use of force arose under circumstances that constitute one of the usual and recurring situations with which law enforcement officers (including MCS personnel) must deal.

102. Defendants Clardy (in his official capacity as Muskogee County Sheriff) and BOCC failed to exercise reasonable care in the training of MCS personnel regarding the use of force and the constitutional limitations imposed thereupon.

103. The failure by Defendants Clardy and BOCC to train MCS personnel regarding excessive force amounts to deliberate indifference to the rights of persons with whom the untrained law enforcement officers of MCS come into contact.

104. Defendants Clardy (in his official capacity as Muskogee County Sheriff) and BOCC failed to exercise reasonable care in the training of MCS personnel regarding the use of force and the constitutional limitations imposed thereupon.

105. The failure by Defendants Clardy and BOCC to adequately train MCS personnel regarding

the use of force and the constitutional limitations imposed thereupon amounts to deliberate indifference to the rights of persons with whom the untrained law enforcement personnel of MCS come into contact.

106.   Defendant Richardson's supervisor(s) had contemporaneous knowledge of the offending incident and/or had knowledge of a prior pattern of similar incidents.

107.   Defendant Manning's supervisor(s) had contemporaneous knowledge of the offending incident and/or had knowledge of a prior pattern of similar incidents.

108.   There is a direct and causal link between the injuries and pain unnecessarily suffered by Plaintiff and the failure of Defendants BOCC and Clardy (in his official capacity as McCurtain County Sheriff) to adequately train MCS law enforcement personnel, including as alleged above.

109.   There is a direct and causal link between the injuries and pain unnecessarily suffered by Plaintiff and the failure of Defendants BOCC and Clardy (in his official capacity as McCurtain County Sheriff) to adequately supervise MCS law enforcement personnel, including as alleged above.

110.   Upon information and belief, there exists a pattern of similar constitutional violations by the untrained and/or unsupervised MCS law enforcement personnel.

111.   Defendants BOCC and Clardy (in his official capacity as McCurtain County Sheriff) had actual and/or constructive notice that their actions and/or failures to act, as described herein, were substantially certain to result in a constitutional violation.

112.   Nevertheless, Defendants BOCC and Clardy (in his official capacity as McCurtain County Sheriff) consciously or deliberately chose to disregard the risk of harm.

**WHEREFORE**, for his Third Cause of Action, Plaintiff Roper Harris prays that this Court

enter judgment in his favor and against Defendants Kevin Clardy (in his official capacity as Muskogee County Sheriff only) and the Board of County Commissions of McCurtain County, Oklahoma, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for prejudgment interest, the recovery from said Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF PRETRIAL DETAINEE**
**IN VIOLATION OF U.S. CONST. AMEND. XIV**
**(42 U.S.C. § 1983)**

For his Fourth Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

113.   Defendants McClain, Stansbury, Ebert, and Johnson (who had the opportunity to observe Harris while he was detained at MCJ, who were responsible for such observation, and/or who came into direct contact with Harris), as described herein, knew that delays in treating Harris's serious medical needs, and/or the denial of any such treatment, would likely expose Harris to a substantial risk of serious harm.

114.   Such knowledge on the part of Defendants McClain, Stansbury, Ebert, and Johnson resulted from their awareness of, *inter alia*, Stansbury and Ebert's unprovoked and unnecessary use of force against Roper in a "blind spot" of the McCurtain County Jail (which included shooting Harris' eye with a pepper ball projectile at extreme close range), Kolby Watson and Jordan Bryant's brutal physical assault upon Harris that (which was

20

carried out at the express direction of McClain and Stansbury prior to Harris being booked into MCJ, left Harris bloody, bruised, limp, and unconscious/semi-conscious), and Harris' obvious, severe injuries, his outward display of extreme pain, and his repeated requests for medical attention.

115.   As detailed hereinabove, given the outward manifestation of his injuries and distress, Harris' medical needs were so obvious to Defendants McClain, Stansbury, Ebert, and Johnson that even a lay person would have easily recognized the necessity for a doctor's attention.

116.   Indeed, Harris' urgent need for medical attention was so undeniable and obvious that when McCurtain County District Attorney Mark Matloff saw Harris' condition, he was compelled to intervene, demanding that Harris be released and taken to the hospital immediately, and proclaiming, "Why is there a 19-year-old beaten up in here with no medical attention?"

117.   As detailed hereinabove, Defendants McClain, Stansbury, Ebert, and Johnson -- intentionally and/or despite their knowledge of a substantial risk of serious harm -- denied and/or delayed Harris's access to medical care, failed to take reasonable measures to abate the substantial risk of harm known to them, knowingly engaged in conduct that they knew would have an extraordinarily high likelihood of exacerbating Harris' injuries, and/or otherwise failed to act.

118.   Given their knowledge of the substantial risk of serious harm, the above-referenced actions and failures on the part of the Defendants McClain, Stansbury, Ebert, and Johnson amount to more than an ordinary lack of care or simple negligence.

119.   The above-described acts and omissions on the part of Defendants McClain, Stansbury,

Ebert, and Johnson -- including their failure to meet Harris's objective medical needs, their delay in meeting such needs, their unprovoked and unnecessary use of constitutionally excessive force upon Harris, their failure to take reasonable measures to abate substantial risks to Harris' safety (about which these Defendants knew and were keenly aware), and their active encouragement and facilitation of violent, physical attacks upon Harris that Defendants believed would injure Harris and/or exacerbate his other recent injuries -- directly and proximately caused Harris to suffer substantial harm.

120. The above-described acts and omissions on the part of Defendants McClain, Stansbury, Ebert, and Johnson -- including their failure to meet Harris's objective medical needs, their delay in meeting such needs, their unprovoked and unnecessary use of constitutionally excessive force upon Harris, their failure to take reasonable measures to abate substantial risks to Harris' safety (about which these Defendants knew and were keenly aware), and their active encouragement and facilitation of violent, physical attacks upon Harris that Defendants believed would injure Harris and/or exacerbate his other recent injuries -- amounted to the deprivation of Harris's constitutional rights.

121. Plaintiff, therefore, is entitled to recover pecuniary and compensatory damages.

122. Additionally or alternatively, by denying and/or delaying Harris's access to medical care, using constitutionally excessive force upon Harris (which was neither provoked nor otherwise necessary),  failing to take reasonable measures to abate known, substantial risks to Harris' safety, and by actively facilitating violent, physical attacks upon Harris by other inmates (which Defendants McClain, Stansbury, Ebert, and Johnson believed were likely to injure Harris and/or to exacerbate his other recent injuries), said Defendants acted maliciously, sadistically, and/or for the very purpose of causing harm to Harris.

**WHEREFORE**, for his Fourth Cause of Action, Plaintiff Roper Harris prays that this Court enter judgment in his favor and against Defendants Scott McClain, Brandon Stansbury, Joe Ebert, and Cody Johnson, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for punitive damages against Defendants McClain, Stansbury, Ebert, and Johnson, prejudgment interest, the recovery from said Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**DELIBERATE INDIFFERENCE TO HEALTH AND SAFETY OF PRETRIAL DETAINEE**
**IN VIOLATION OF U.S. CONST. AMEND. XIV**
**(42 U.S.C. § 1983)**

For his Fifth Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

123. Defendants McClain, Stansbury, Ebert, and Johnson (who observed Harris remotely, who were responsible for such observation, and/or who came into direct contact with Harris) had an obligation to take reasonable measures to guarantee Harris's safety.

124. The above-referenced obligation included a duty to protect Harris from violence at the hands of other prisoners, including Jordan Bryant and Kolby Watson.

125. Defendants McClain, Stansbury, Ebert, and Johnson caused Harris to be placed into the same cell as Jordan Bryant and Kolby Watson, and/or permitted Bryant and Watson to remain in the same cell as Harris, despite knowing that Bryant and Watson had been directed, or otherwise planned, to violently assaulted Harris.

126. In so doing, the individual Defendants subjected Harris to conditions that posed a substantial and unjustifiably high risk of -- and ultimately resulted in -- serious harm to Harris.

127. Defendants McClain, Stansbury, Ebert, and Johnson were aware of facts (including, without limitation, Stansbury and Ebert's initial, unprovoked, and unnecessary assault upon Harris, Harris's weakened state and inability to protect himself, the need to protect Harris from any further physical trauma, and the directive given to inmates Jordan Bryant and Kolby Watson that Harris be violently attacked) from which they knew, or could have drawn the inference, that housing Harris in the same cell as Bryant and Watson would pose a substantial risk of serious harm to Harris.

128. Upon information and belief, and in light of the circumstances described hereinabove, Defendants McClain, Stansbury, Ebert, and Johnson did, in fact, know, or otherwise draw the inference, that housing Harris in the same cell as Bryant and Watson would pose a substantial risk of serious harm to Harris.

129. Defendants McClain, Stansbury, Ebert, and Johnson -- in the face of an unjustifiably high risk of harm to Harris that was known and/or obvious to them -- consciously and/or recklessly disregarded this substantial risk of serious harm by placing Harris into the same cell as Bryant and Watson, by permitting Bryant and Watson to remain in the same cell as Harris, and/or by failing to separate Harris from Bryant and Watson or otherwise to intervene.

130. Additionally or alternatively, in placing Harris into the same cell as Bryant and Watson, permitting Bryant and Watson to remain in the same cell as Harris, and/or failing to separate Harris from Bryant and Watson or otherwise to intervene), Defendants McClain,

Stansbury, Ebert, and Johnson acted maliciously, sadistically, and/or for the very purpose of causing harm to Harris.

**WHEREFORE**, for his Fifth Cause of Action, Plaintiff Roper Harris prays that this Court enter judgment in his favor and against Defendants Scott McClain, Brandon Stansbury, Joe Ebert, and Cody Johnson, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for punitive damages against Defendants McClain, Stansbury, Ebert, and Johnson, prejudgment interest, the recovery from said Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

### SIXTH CAUSE OF ACTION
#### USE OF EXCESSIVE FORCE AGAINST PRETRIAL DETAINEE
#### IN VIOLATION OF U.S. CONST. AMEND. XIV
#### (42 U.S.C. § 1983)

For his Sixth Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

131. At the time of the events upon which Plaintiff's claims are based, Harris, as a pretrial detainee, had a clearly-established constitutional right under the Fourteenth Amendment to be secure in his person and free from objectively unreasonable and/or excessive force.

132. Any reasonable officer knew or should have known of Harris's above-referenced rights at the time of the events upon which Plaintiff's claims are based, as such rights were clearly established.

133. At the time the violent physical force was used by Defendants Stansbury, Ebert, and/or one

25

or more unidentified MCJ workers, Harris posed no threat or serious physical harm to himself or others, and violent force was unnecessary to restrain Harris or to secure the safety of Stansbury, Ebert, or anyone else.

134. Accounting for the "legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained, the violent force used on Harris was objectively excessive, constitutionally unreasonable, and disproportionate to any legitimate interest in managing MCJ.

135. The excessive force described herein was a direct and proximate cause of Harris's unnecessary physical pain, his emergent physical injuries, the worsening of his condition, the severe emotional distress and mental anguish he suffered, and the hospital, surgical, and other medical expenses he incurred.

**WHEREFORE**, for his Sixth Cause of Action, Plaintiff Roper Harris prays that this Court enter judgment in his favor and against Defendants Brandon Stansbury and Joe Ebert, and that it award Plaintiff all available pecuniary and non-economic damages in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for punitive damages against Defendants Stansbury and Ebert, prejudgment interest, the recovery from said Defendants of all attorney fees and costs reasonably incurred by Plaintiff in his prosecution of this action, and an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that this Court deems just and proper.

### SEVENTH CAUSE OF ACTION
#### *MONELL* LIABILITY FOR CONSTITUTIONAL VIOLATIONS
#### (42 U.S.C. § 1983)

For his Seventh Cause of Action, Plaintiff re-alleges and incorporates by reference all of

the foregoing paragraphs, and further states:

136. The above-referenced constitutional violations to which Harris was subjected were in furtherance of, consistent with, and causally connected to the policies, customs, and practices that MCS/McCurtain County and/or MCJT had previously created, implemented, observed, maintained, and/or tolerated (or in which MCS/McCurtain County and/or MCJT had otherwise previously acquiesced).

137. Such policies, customs, and/or practices include those specifically set forth in prior filings with this Court.

138. Whether formal or informal, the aforementioned policies, customs, and practices of MCS/McCurtain County and/or MCJT were well-settled and permanent at the time of the events upon which Plaintiff's claims are based.

139. Furthermore, the above-referenced constitutional violations to which Harris was subjected arose under circumstances that constitute usual and recurring situations with which MCS officers and/or MCJ administrators, supervisors, detention officers, medical staff, and other personnel must routinely deal and/or have regularly or previously dealt.

140. MCJT failed to adequately train, supervise, and/or control its administrators, supervisors, detention officers, medical staff, and other MCJ personnel regarding their obligations under the Eighth and Fourteenth Amendments to refrain acting with deliberate indifference toward the serious medical needs of MCJ inmates/detainees.

141. MCJT failed to adequately train, supervise, and/or control the administrators, supervisors, detention officers, and other MCJ personnel regarding their obligations under the Eighth and Fourteenth Amendments to protect prisoners, detainees, and other inmates from violence at the hands of other prisoners, detainees, and inmates.

142. MCS/McCurtain County and MCJT failed to adequately train, supervise, and/or control the law enforcement officers, administrators, supervisors, detention officers, and/or other personnel in their employ regarding the proper use of force and/or prohibitions against said personnel using constitutionally-excessive or unreasonable force on suspects, arrestees, detainees, and/or inmates.

143. The failure to adequately train, supervise, and/or control the law enforcement officers, administrators, supervisors, detention officers, medical staff, and/or other personnel in the employ of MCS or MCJT, as stated above, amounts to deliberate indifference to the rights of suspects, arrestees, detainees, and/or inmates.

144. A direct and causal link exists between the pain and injury unnecessarily suffered by Harris and the failure to adequately train the law enforcement officers, administrators, supervisors, detention officers, medical staff, and/or other personnel in the employ of MCS or MCJT.

145. A direct and causal link exists between the pain and injury unnecessarily suffered by Harris and the failure to adequately supervise the law enforcement officers, administrators, supervisors, detention officers, medical staff, and/or other personnel in the employ of MCS or MCJT.

146. Upon information and belief, MCS/BOCC and/or MCJT had contemporaneous knowledge of the above-referenced constitutional violations.

147. As detailed hereinabove, there exists a lengthy pattern of similar constitutional violations by the inadequately trained and/or inadequately supervised law enforcement officers, administrators, supervisors, detention officers, medical staff, and/or other personnel in the employ of MCS or MCJT.

148. MCS/BOCC and MCJT had actual and/or constructive notice that their actions and/or failures to act, as described herein, were substantially certain to result in the violation of the constitutional rights of the suspects and arrestees of MCS and/or MCJ detainees and inmates.

149. Moreover, given the above-described history of constitutional violations, which is lengthy and ongoing, the need to provide the law enforcement officers, administrators, supervisors, detention officers, medical staff, and/or other personnel in the employ of MCS and/or MCJT with more and/or different training was obvious to MCS/BOCC and/or MCJT, as was the likelihood that the aforementioned inadequacies would result in violations of the constitutional rights of the suspects and arrestees of MCS and/or MCJ detainees and inmates.

150. Nevertheless, MCS/BOCC and MCJT consciously or deliberately chose to disregard the substantial risk of serious harm to the suspects and arrestees of MCS and/or MCJ detainees and inmates.

151. MCS/BOCC and MCJT, through its continued encouragement, ratification, approval, and/or maintenance of the aforementioned policies, customs, and/or practices, in spite of their known and obvious inadequacies and dangers, has been deliberately indifferent to the health and safety of the suspects and arrestees of MCS and/or MCJ detainees and inmates, including Harris.

152. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Harris suffered injuries as alleged herein, entitling Plaintiff to recover damages.

**WHEREFORE**, for his Seventh Cause of Action, Plaintiff Roper Harris prays for judgment against Defendants McCurtain County Jail Trust and Board of County Commissioners

of McCurtain County, Oklahoma for all available damages (including pecuniary and non-economic damages) in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for pre-judgment interest, attorney fees, and the costs of this action, to be taxed against said Defendants, along with an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that the Court deems just and proper.

### EIGHTH CAUSE OF ACTION:
### UNLAWFUL USE OF EXCESSIVE FORCE
### (OKLA. STAT. tit. § 151 *et seq.*)

For his Eighth Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

153. Defendants Clardy, Williamson, and Manning restrained Plaintiff by cuffing his wrists behind his back.

154. Despite the fact that Plaintiff was securely handcuffed and posing no resistance to Defendants Clardy, Williamson, and Manning, or any one or combination of them, unnecessarily and without provocation violently pushed or threw Harris to the concrete ground.

155. The use of force upon Plaintiff by Defendants Clardy, Williamson, and Manning was not a good faith effort to restrain Plaintiff or otherwise to maintain control.

156. Additionally or alternatively, the use of force upon Plaintiff by Defendants Clardy, Williamson, and Manning was done maliciously, sadistically, and/or or the very purpose of causing harm to Plaintiff.

157. Defendants Clardy, Williamson, and Manning, or any of them, knew or should have known

that the excessive physical force used against Plaintiff would result in Plaintiff suffering serious harm.

158.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, Plaintiff was not exhibiting any meaningful physical resistance to said Defendants.

159.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, Plaintiff was restrained to such a degree that even if Plaintiff wanted to, he was physically incapable of meaningfully resisting said Defendants.

160.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, there was no need for the application of such force.

161.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, Plaintiff posed no threat whatsoever to said Defendants' safety.

162.  At the time Defendants Clardy, Williamson, and Manning used excessive physical force on Plaintiff, said Defendants did not reasonably perceive Plaintiff as posing some threat warranting the application of force.

163.  Defendants Clardy, Williamson, and Manning made no effort to temper the severity of the force they employed.

164.  Plaintiff unnecessarily suffered pain and injury as a result of the force used by Defendants Clardy, Williamson, and Manning.

165.  In using force against Plaintiff as set forth above, Defendants Clardy, Williamson, and Manning were acting under color of state law in furtherance of assigned duties.

166.  Each of the above-described acts in which Defendants Clardy, Williamson, and/or Manning engaged were incidental to some service being performed for his or her employer.

167.  Alternatively, each of the above-described acts in which Defendants Clardy, Williamson, and/or Manning engaged arose out of an emotional response to actions being taken for his or her employer.

**WHEREFORE**, for his Eighth Cause of Action, Plaintiff prays for judgment against Defendants Board of County Commissioners of McCurtain County, Oklahoma, Kevin Clardy, Richard Williamson, and Alicia Manning for all available pecuniary and non-economic damages, as well as punitive damages against Defendants Clardy, Williamson, and Manning, in an amount exceeding $75,000.00, or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented in this case.  Plaintiff also prays for prejudgment interest, attorney fees, and the costs of this action, to be taxed against Defendants BOCC, Clardy, Williamson, and Manning, along with an award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or that the Court deems just and proper.

## NINTH CAUSE OF ACTION:
### UNLAWFUL USE OF EXCESSIVE FORCE
### IN VIOLATION OF OKLA. CONST, ART. 2 § 30

For his Ninth Cause of Action, Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs, and further states:

168.  The use of force on Plaintiff by Defendants Stansbury and Ebert was not a good faith effort to restrain Plaintiff or otherwise to maintain control.

169.  Additionally or alternatively, the use of force on Plaintiff by Defendants Stansbury and Ebert was done maliciously, sadistically, and/or or the very purpose of causing harm to Plaintiff.

170.  Defendants McClain, Stansbury, Ebert, and Johnson, or any of them, knew or should have known that their actions and/or failure to act would result in Plaintiff suffering serious

injury or harm.

171.    Plaintiff unnecessarily suffered pain and injury as a result of said Defendants' actions
        and/or failure to act.

172.    The actions and/or failure to act by Defendants McClain, Stansbury, Ebert, and Johnson
        were done under color of state law.

        **WHEREFORE**, for his Ninth Cause of Action, Plaintiff prays for judgment against

Defendants McCurtain County Jail Trust, Scott McClain, Brandon Stansbury, Joe Ebert, and Cody

Johnson for all available pecuniary and non-economic damages, as well as punitive damages

against Defendants McClain, Stansbury, Ebert, and Johnson, in an amount exceeding $75,000.00,

or such other specific sum consistent with the evidence that Plaintiff anticipates will be presented

in this case.  Plaintiff also prays for prejudgment interest, attorney fees, and the costs of this action,

to be taxed against Defendants MCJT, McClain, Stansbury, Ebert, and Johnson, along with an

award of all other relief (whether legal, equitable, or both) to which Plaintiff may be entitled and/or

that the Court deems just and proper.

 

 

**Respectfully submitted:**

**CAMP LAW FIRM**

**By:**   _Christopher L. Camp_
          **Christopher L. Camp, OBA #18541**
          **7122 South Sheridan Road, Suite #2-382**
          **Tulsa, Oklahoma  74133**
          **Telephone: (918) 200-4871**
          **Facsimile: (918) 340-6799**
          **E-mail: camplawfirm@gmail.com**

 

 

**and**

GARRETT LAW

By:     **/s/ D. Mitchell Garrett, Jr.**
             D. Mitchell Garrett, Jr., OBA# 20704
             320 South Boston Avenue, Suite 825-G
             Tulsa, Oklahoma  74103
             Telephone: (918) 221-6190
             Facsimile: (918) 340-6799
             E-mail: mitchell@garrettlawcenter.com

**Attorneys for Plaintiff Roper Harris**