IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROPER HARRIS, | ) |
|              Plaintiff, | ) |
| v. | ) Case No. 22-cv-187-RAW-DES |
| McCURTAIN COUNTY JAIL TRUST; BOARD OF COUNTY COMMISIONERS OF McCURTAIN COUNTY, OKLAHOMA; SCOTT McLAIN, individually and in his official capacity as McCurtain County Jail Administrator; KEVIN CLARDY, individually and in his official capacity as McCurtain County Sheriff; and RICHARD WILLIAMSON; ALICIA MANNING; BRANDON STANSBURY; JOE EBERT; and CODY JOHNSON; in their official and individual capacities, | ) |
|              Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants Richard Williamson ("Defendant Williamson") and Alicia Manning ("Defendant Manning"), in their official and individual capacities, and Defendant Kevin Clardy ("Defendant Clardy"), in his individual capacity's Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Rule 12(b)(2), (4), (5) and (6) for lack of personal jurisdiction due to insufficient process and insufficient service of process and for failure to state a claim upon which relief can be granted. (Docket No. 61). On November 29, 2022, United States District Judge Ronald A. White referred this case to Magistrate Judge Kimberly E. West for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. (Docket No. 40). On June 2, 2023, the Court Clerk reassigned the undersigned Magistrate Judge as the referral judge for this case. (Docket No. 72). For the

1

reasons set forth below, Defendants' Motion to Dismiss should be GRANTED IN PART and DENIED IN PART.

I. **Background**

On June 27, 2022, Plaintiff Roper Harris filed his Complaint alleging violations of the United States Constitution, the Oklahoma Constitution, and Oklahoma law arising out of his arrest and incarceration at the McCurtain County Jail in September of 2021. (Docket. No. 2). Plaintiff filed his First Amended Complaint on December 5, 2022. (Docket No. 41). Plaintiff's First Amended Complaint alleges that, at all times relevant, Defendant Clardy was Sheriff of McCurtain County, Oklahoma. (Docket No. 41 at ¶ 24). Plaintiff alleges that on September 15, 2021, Defendant Clardy along with his deputies, Defendant Williamson and Defendant Manning, arrested Plaintiff at his residence. *Id* at ¶76. During this arrest, Plaintiff alleges that while he was handcuffed and not resisting he was "forcibly yanked and shoved . . . down a high, steep flight of stairs . . . ." *Id.* at ¶¶ 76-79. Plaintiff alleges these actions amount to constitutionally unreasonable, excessive and unnecessary force, and that Defendants were acting under the color of state law. *Id.* at ¶ 78, ¶ 91. Furthermore, Plaintiff alleges that Defendants Clardy, Williamson, and Manning were each aware that the force being employed was excessive and despite opportunity to do so, failed to intervene, to prevent, and/or stop the excessive force. *Id.* at ¶ 94.

Defendants raise four (4) issues for the Court's consideration in their Motion to Dismiss Plaintiff's First Amended Complaint: (1) service upon the Defendants was untimely (Docket No. 61 at 3-8); (2) Defendants Manning and Williamson do not have an "official capacity" under Oklahoma Law (*id.* at 8-9); (3) Plaintiff has failed to state a plausible claim against Defendants in their individual capacities under 42 U.S.C § 1983 or state tort law (*id*. at 9-16); and (4) Defendants are entitled to qualified immunity (*id*. at 16-17).

## II. Analysis

### a. Timing of Service and Permissible Extension of Time

The first issue raised by Defendants in their Motion to Dismiss Plaintiff's First Amended Complaint is that service upon the Defendants was untimely. (Docket No. 61 at 3-8). The undersigned Magistrate Judge has addressed this issue in Defendant McCurtain County Jail Trust's Motion to Dismiss as well as the Motion to Dismiss filed by Defendants Board of County Commissioners of McCurtain County and Kevin Clardy, in his official capacity, and found that although the Defendants were not served within 90-days of the filing of the complaint and Plaintiff did not show good cause sufficient to warrant a mandatory extension of time for service, the Court nonetheless has the discretion to grant a permissible extension of time for the Plaintiff to serve. *Espinoza v. United States*, 52 F. 3d 838, 841 (10th Cir. 1995). As the Defendants have not suffered any undue prejudice for the delay in service; service was in fact effected; and the parties have conducted a discovery conference, exchanged initial disclosures, submitted a joint status report, and commenced discovery, the undersigned Magistrate Judge recommends that Defendants' Motion to Dismiss for untimely service should be DENIED.

### b. Plaintiff's Official Capacity Claims Against Defendants Manning and Williamson Should be Dismissed.

In their second issue, Defendants argue Defendants Manning and Williamson do not have an "official capacity" under Oklahoma law because neither have final policymaking authority. (Docket 61 at 8). Defendants argue that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* citing *Crowson v. Washington Cty. Utah*, 983 F. 3d. 116, 1173 n1. (10th Cir. 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Defendants argue that for this to occur, the officer must have final policymaking authority. *Id.* citing *Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No.*

3

*2*, 523 F. 3d 1219, 1223-34 (10th Cir. 2008). The Supreme Court has determined that state law "will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). Defendants argue that under Okla. Stat. tit. 19 § 547, the sheriff is responsible for the official acts of his undersheriff and deputy sheriffs. (Docket No. 61 at 9). Therefore, Defendants argue that under Oklahoma law, the sheriff is the official charged with final policy-making authority regarding the operation of the county Sheriff's Office. *Id.* Based on this, Defendants argue that Plaintiff has failed to state a plausible § 1983 claim against Defendants Manning and Williamson in their official capacities and those claims should be dismissed. *Id.*

Plaintiff, in his response, does not disagree with the Defendants and states that the purpose of naming Defendants Williamson and Manning in their official capacities was to impose liability upon the governmental entity that employed them (*i.e.,* the McCurtain County Sheriff's Office). (Docket No. 66 at 7). Plaintiff therefore agrees that the Court may appropriately dismiss Defendants Manning and Williamson, in their official capacities, if the Court finds that Plaintiff has sued the McCurtain County Sheriff's Office directly. *Id* at 7-8. By suing Defendant Clardy in his official capacity as Sheriff of McCurtain County, Plaintiff has indeed asserted claims against the McCurtain County Sheriff's Office. *See, e.g., Hayes v. Owen*, No. 22-CV-0230-CVE-SH, 2023 WL 2716579, at *6 (N.D. Okla. Mar. 30, 2023) ("Sheriff Owen, not [Lieutenant] Prentice has final policymaking authority regarding the hiring, training, and discipline of WCSO deputies . . . . Thus, any official capacity claims asserted against Prentice are redundant with the official capacity claims asserted against Sheriff Owen in the arrest complaint.").

Plaintiff maintains however, that his claims against Defendant Williamson and Manning in their individual capacities must continue because they are alleged to have personally participated

4

in the constitutional deprivations set forth in his First Amended Complaint. (Docket No. 66 at 8). Plaintiff cites *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) as support. *Bennett* provides "[p]ersonal participation is an essential allegation in a § 1983 claim." *Id*. citing *Battle v. Lawson*, 352 F. Supp. 156 (W.D. Okla. 1972). Because both parties agree that a suit against Defendant Williamson and Defendant Manning in their official capacity is not warranted or necessary, these allegations should be dismissed. Therefore, Defendants Williamson and Manning's Motion to Dismiss their official capacity claims should be GRANTED.

### c. Plaintiff has Stated a Plausible 42 U.S.C. § 1983 Excessive Force Claim

Defendants next contend that Plaintiff has failed to allege sufficient facts to state a plausible §1983 excessive force claim against the Defendants in their individual capacities. (Docket No. 61 at 9). On a Motion to Dismiss, the court must decide whether Plaintiff has alleged "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id.* at 555 (quotation omitted). It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability – "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Instead, a plaintiff must state enough facts to nudge his claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Defendants argue that for them to be liable under § 1983, Plaintiff must establish that the Defendants "'acted under color of state law and caused or contributed to the alleged violation.'" (Docket No. 61 at 9) (quoting *Jenkins v. Wood*, 81 F. 3d 988, 994 (10th Cir. 1996)). As set forth above, personal participation is essential to find liability. Thus, Plaintiff must demonstrate

Defendants acted under color of state law and that they personally participated in the alleged constitutional violation(s). *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007); *Foote v. Spiegel*, 118 F. 3rd 1416, 1423 (10th Cir. 1997). For liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007).

Defendants argue that Plaintiff's complaint fails to provide sufficient factual allegations to raise a plausible claim that any of the Defendants violated Plaintiff's constitutional rights by using excessive force. (Docket No. 61 at 11). Despite noting Plaintiff's allegation that Defendants used excessive and unnecessary force against him after he was handcuffed and not resisting by forcibly yanking and shoving him down a flight of stairs and violently throwing him down face-first into the concrete sidewalk, (Docket No. 41, ¶¶ 79-80), Defendants claim Plaintiff's allegations are wholly conclusory and are not supported by any specific, non-conclusory allegations of fact. (Docket No. 61 at 11).

Defendants argue that because Plaintiff notes that Defendants or "any one or combination of them, engaged in these actions," Plaintiff provides no isolated facts as to what each of the individual Defendants is alleged to have done. *Id*. According to Defendants, these collective allegations are insufficient to state a plausible claim for excessive force under § 1983. Defendants base this argument on *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) and state that the Court in *Robbins* held, "that to plead a plausible claim in a case that is subject to a qualified immunity defense, so as to survive a motion to dismiss, the plaintiffs must allege facts sufficient to show, assuming they are true, that defendants plausibly violated plaintiffs' constitutional rights." (Docket No. 61 at 11) (citing *Robbins,* 519 F.3d at 1249). Where the complaint fails to isolate the

alleged unconstitutional acts of each defendant, it does not provide adequate notice as to the nature of the claims against each. *Robbins,* 519 F.3d at 1250.

In *Robbins*, suit was brought by the parents of an eight-month-old (Renee) who died at the hands of her caretaker. This caretaker was recommended to the parents and subsidized by the Oklahoma Department of Human Services ("OKDHS"). Plaintiffs brought the suit alleging § 1983 violations of Renee's constitutional rights and various other torts in connection with her death. The suit named OKDHS along with three individual OKDHS workers. The Tenth Circuit held that the case should be dismissed for failure to state a claim upon which relief can be granted. *Id.* at 1253-54).

The Court determined that "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."" *Id.* at 1248 (quoting *Twombly*, 550 U.S. at 555 n.3). The Court in *Robbins* also determined that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading." *Id.* In *Robbins*, the context was a claim of qualified immunity by state officials or employees who were sued for damages in their personal capacity for injuries to a child inflicted by a third party. The complaint failed to isolate the alleged unconstitutional acts of each defendant, but instead alleged that "'Defendants' . . . 'instruct[ed] the Plaintiffs to place Renee Dawn Robins in a specific Daycare'; 'Defendants'. . . 'assert[ed] control over such Daycare'" *Id.* at 1250. The complaint made no mention of which, if any, defendant had direct contact with Renee or her parents, and did not specify how the defendants who did not have direct contact might be individually liable for deprivations of Renee's constitutional rights. *Id.* "Given the complaint's use of either the collective term 'Defendants' or a list of the defendants

7

named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id*.

The case at bar is distinguishable from *Robbins* in that Plaintiff does not use the collective term "Defendants" but does in fact indicate which Defendants are alleged to do what. Plaintiff supports his allegations of excessive use of force against Defendants Manning and Williamson with specific facts that, if taken as true, state "enough facts to state a claim of relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id*. at 555 (quotation omitted). It is clear that Plaintiff's Amended Complaint does in fact provide sufficient information to provide not only fair notice of the nature of the claim, but also grounds on which the claim rests.

The Tenth Circuit has opined that in use of force cases, the district court may perform an individualized analysis of the officer's action, or where appropriate, analyze the aggregated officer conduct. *See, e.g., Est. of Booker v. Gomez,* 745 F.3d 405, 421 (10th Cir. 2014). Where the facts allege defendants actively and jointly participated in the use of force and/ or a defendant present could be liable under a failure-to-intervene theory, the court does not need to conduct an individualized analysis of the defendants' involvement in order to determine whether excessive force was used. *Id* at 423.

Plaintiff alleges that Defendants Clardy, Manning, and Williamson were the officers who were present and participated in the arrest of Plaintiff at his home on September 15, 2021, and that while Plaintiff was restrained and not exhibiting resistance, forcibly yanked and shoved Plaintiff down a high, steep flight of stairs and any one or a combination of Defendant Clardy, Williamson, and Manning unnecessarily and without provocation violently threw [Plaintiff] down, slamming

him into the concrete. (Docket No. 41, ¶¶ 76-80). Plaintiff further alleges that "Defendants Clardy, Williamson, and/or Manning each keenly aware that the force being employed was excessive and despite ample opportunity failed to intervene to prevent and/or stop each other from using excessive and unreasonable force . . ." *Id.* at ¶ 94. These facts, taken in context with the rest of the Plaintiff's Complaint, present sufficient information to give fair notice to Defendants Clardy, Williamson, and Manning of the nature of the claims, and the grounds on which the claims rests. As such, the undersigned Magistrate Judge recommends that Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 Excessive Force Claims should be DENIED.

        **d.    Defendants are not Immune from Plaintiff's State Law Excessive Force Claims**

The undersigned Magistrate Judge next turns to Defendants' claims that they are immune from suit under Oklahoma law. (Docket No. 61 at 15). Okla. Stat. tit. 51 § 152.1 provides sovereign immunity for "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment" and notes that they "shall be immune from liability for torts." Okla. Stat. tit. 51 § 152.1(A). This immunity, however, is subject to a waiver to the extent and in the manner provided in the Governmental Tort Claim Act ("GTCA"). *Id.* at § 152.1(B). Defendants argue that under the GTCA, specifically § 153(C), they cannot be named as a defendant if they were acting within the scope of employment. However, the GTCA defines the term "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." Okla. Stat. tit. 51, § 152(12). As such, courts have found that "[a]n act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003).

While Defendants indicate that Plaintiff's allegations are "wholly conclusory, and are not supported by any specific allegations of fact," (Docket No. 61, at 16), the undersigned Magistrate Judge disagrees. The factual allegations presented by Plaintiff "'raise an inference of bad faith sufficient to withstand dismissal pursuant to the GTCA.'"[1] *Doe v. Oologah-Talala Indep. Sch. Dist.*, No. 21-CV-240-TCK-SH, 2022 WL 17406372, at *11–12 (N.D. Okla. Dec. 2, 2022) (quoting *Romero v. City of Miami*, 8 F. Supp. 3d 1321, 1333 (N.D. Okla. 2014); *see also Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (rejecting the proposition that "malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others"); *Shepard v. CompSource Okla.*, 209 P.3d 288, 293 (Okla. Civ. App. 2009) ("[A]cts contrary to the interests of the employer are not within the scope of employment."). Finally, courts have repeatedly noted that "'while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss.'" *Doe,* 2022 WL 17406372, at *11–12, (quoting *Pendegraft v. Bd. of Regents of Okla. Colls.*, No. 18-CV-793-D, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019)).

For these reasons, the undersigned Magistrate Judge recommends that Defendants' Motion to Dismiss Plaintiff's state law excessive force claims should be DENIED.

### e. Defendants Are Not Entitled to Qualified Immunity at This Stage.

Finally, Defendants argue they are entitled to qualified immunity from Plaintiff's § 1983 claims against them in their individual capacities. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[1] Plaintiff alleges the use of force upon him was done "maliciously, sadistically, and/or [for] the very purpose of causing [him harm]." This inference can be drawn from the allegation that Plaintiff at the time of the harm was restrained and not resisting, and therefore was not in a "good faith effort to restrain [him] or otherwise maintain control of him." (Docket No. 41, ¶¶77-82).

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). This doctrine is intended "to shield officials from harassment, distraction, and liability when they perform their duties reasonably," while also ensuring that officials who "exercise power irresponsibly" are held accountable. *Id.* Defendants state that they are "'entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known.'" (Docket No. 61 at 16) (quoting *Murrell v. Sch. Dist. No. 1,* 186 F.3d 1238, 1251 (10th Cir. 1999)). Defendants argue that since Plaintiff has failed to state a plausible § 1983 claim against the Defendants in their individual capacities, they are entitled to qualified immunity. *Id.* at 17.

"When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs,* No. CIV-11-0996-HE, 2014 WL 7399367, at *8 (W.D. Okla. Dec. 29, 2014) citing *Brown v. Montoya,* 662 F.3d1152, 1162-64 (10th Cir. 2011) and *Iqbal*, 556 U.S. at 666, 673-75, 677-84.  The Court scrutinizes "the defendant's conduct as alleged in the complaint . . . for objective legal reasonableness" at the motion to dismiss stage. *Turner v. Oklahoma Cnty. Bd. of Cnty. Comm'rs,* No. 19-6092, 804 F. App'x 921, 924 (10th Cir. 2020) (unpublished).  Thus, when a defendant raises a qualified immunity defense in response to a motion to dismiss, the court uses a two-part test to determine whether the plaintiff: (1) plausibly pleaded that the defendant violated a constitutional right, and (2) shows that the constitutional right was clearly established at the time of the defendant's alleged misconduct. *A.N. ex rel. Ponder v. Styling,* 928 F.3d 1191, 1196 (10th Cir. 2019).

The constitutional violations Plaintiff alleges are use of excessive force in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. (Docket No. 66 at 9). Different standards govern excessive force claims brought under the Fourth and Fourteenth Amendments. "The Fourth Amendment is applicable to instances of alleged excessive force 'leading up to and including an arrest' under that amendment's prohibition against unreasonable seizures." *Spradlin v. City of Owasso*, No. 12-CV-497-JED-FHM, 2014 WL 1664974, at *7 (N.D. Okla. Apr. 25, 2014) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010)). If the plaintiff can establish that "the officers used greater force than would have been reasonably necessary to effect a lawful arrest," a Fourth Amendment excessive force claim exists. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893–94 (10th Cir. 2009). Claims of excessive force under the Fourth Amendment are analyzed under an objective reasonableness standard. *Spradlin,* 2014 WL 1664974, at *7. In contrast, the Fourteenth Amendment governs any claim of excessive force brought by an arrestee or pretrial detainee.[2] *See Porro*, 624 F.3d at 1326. To determine whether a use of force is excessive under the Fourteenth Amendment, the courts consider three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003).

The allegations of the First Amended Complaint, if true, state plausible claims of excessive force under both the Fourth and Fourteenth Amendments. Plaintiff alleges that Defendants "restrained [him] by cuffing his wrists behind his back." (Docket No. 41 at ¶ 77). While restrained and despite any physical resistance, Plaintiff alleges Defendants "forcibly yanked and shoved [him] down a high, steep flight of stairs . . . in an exceedingly rough and dangerous manner

---

[2] A pretrial detainee is an individual who has had "a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

intended to cause [him] to lose his balance, fall, and suffer injury." *Id.* at ¶¶ 78-79. Furthermore, Plaintiff alleges that despite the fact he was "securely handcuffed and posing no resistance, Defendants . . . unnecessarily and without provocation violently threw Harris down, slamming him face-first into the concrete sidewalk." *Id.* at ¶ 80. Accepting the allegations as true and construing them in the light most favorable to the Plaintiff, the force alleged to have been used on Plaintiff during his arrest would amount to objectively unreasonable force. Furthermore, the allegations indicate that the amount of force used was contraindicated based on the Plaintiff's restraint and lack of resistance. Plaintiff further alleges that the "Defendants' use of force on [him] was done maliciously, sadistically, and/or [for] the very purpose of causing harm to Plaintiff." (Docket No. 41 at ¶¶ 81-82). These allegations, if true, show actions that were unconstitutional under clearly established law.

In order for the law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Est. of Booker,* 745 F.3d at 427 (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)). "A [deputy's] conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable [deputy] would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Tenth Circuit has developed "'a sliding scale to determine when law is clearly established' in which '[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity

is required from prior case law to clearly establish the violation.'" *Est. of Booker*, 745 F.3d 405 at 427 (quoting *Casey v. City of Federal Heights,* 509 F.3d 1278, 1284 (10th Cir. 2014).

Accepting the allegations as true and construing them in the light most favorable to the Plaintiff; at this time, the undersigned Magistrate Judge finds Plaintiff has alleged conduct that would violate a Fourth or Fourteenth Amendment right that was clearly established in September 2021. Therefore, Defendants' Motion to Dismiss based on qualified immunity should be DENIED.

Accordingly, the undersigned Magistrate Judge recommends that Defendant's Motion to Dismiss (Docket No. 61) should be GRANTED IN PART as to Defendants Williamson and Manning in their official capacities but otherwise DENIED. Any objections to this Report and Recommendation must be filed within fourteen days. See 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this  6th  day of  September , 2023.

_____
D. Edward Snow
United States Magistrate Judge