IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROPER HARRIS,                                            ) | |
|                Plaintiff,                        ) | |
| v.                                                                         ) | Case No. 22-cv-187-RAW-DES |
| McCURTAIN COUNTY JAIL TRUST;                 ) | |
| BOARD OF COUNTY COMMISSIONERS        ) | |
| OF McCURTAIN COUNTY, OKLAHOMA;       ) | |
| SCOTT McLAIN, individually and in his            ) | |
| official capacity as McCurtain County Jail        ) | |
| Administrator; KEVIN CLARDY, individually   ) | |
| and in his official capacity as McCurtain County ) | |
| Sheriff; and RICHARD WILLIAMSON,              ) | |
| ALICIA MANNING, BRANDON STANSBURY, ) | |
| JOE EBERT, and CODY JOHNSON, in their      ) | |
| official and individual capacities,                       ) | |
|                Defendants.                    ) | |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff, Roper Harris' Motion for Adverse Inference pursuant to Fed R. Civ. P. 37(e) for Intentional Destruction of Key Text Messages (Docket No. 383). On November 29, 2022, United States District Judge Ronald A. White referred this case to Magistrate Judge Kimberly E. West for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. (Docket No. 40). On June 2, 2023, the Court Clerk reassigned the undersigned Magistrate Judge as the referral judge for this case. (Docket No. 72). For the reasons set forth below, Plaintiff's Motion is DENIED in part and GRANTED in part.

    I.    Background

Plaintiff's claims largely stem from two alleged assaults upon him after being brought to the McCurtain County Jail on September 15, 2021. Plaintiff alleges the first assault was committed

by two jailers, Defendants Joe Ebert (Defendant Ebert) and Brandon Stansbury (Defendant Stansbury), at the instruction of Defendant Scott McLain (Defendant McLain),[1] the Administrator of the McCurtain County Jail. According to Plaintiff, Defendants Ebert and Stansbury used constitutionally unreasonable force by shooting him in the eye at close range with a JPX "pepper ball" gun without provocation, threat, or justification. (Docket No. 261 at 3).

Plaintiff alleges the second assault involved two inmates, Kolby Watson and Jordan Bryant, at the express direction of Defendant McLain and three of his subordinates (Defendants Cody Johnson, Ebert, and Stansbury), all four of whom pre-planned, coordinated, and facilitated the violent attack. *Id.* Furthermore, Plaintiff alleges that after shooting him in the eye with the JPX gun and arranging his severe beatdown by two inmates, jail personnel failed to seek medical attention for Plaintiff despite his obvious injuries. *Id.* As such, Plaintiff filed this case alleging 42 U.S.C. § 1983 claims against McCurtain County Jail Trust ("MCJT") and the above-named jail employees for use of excessive force in violation of the Fourteenth Amendment; deliberate indifference to the health and safety of a pretrial detainee in violation of the Fourteenth Amendment; deliberate indifference to the serious medical needs of a pretrial detainee in violation of the Fourteenth Amendment; and *Monell* liability against MCJT and the Board of County Commissioners of McCurtain County for the constitutional violations. *Id.* at 3-4.

Plaintiff now argues that Defendants McLain and Ebert deliberately deleted text messages from September 15, 2021, the night Plaintiff was brought to McCurtain County Jail, prior to their interviews with the Oklahoma State Bureau of Investigation ("OSBI"), which was investigating Plaintiff's claims, and that Defendant McLain intentionally destroyed his phone after learning of Plaintiff's governmental tort claim notice which specifically named Defendant McLain. (Docket

---

[1] The Court will refer to Scott McLain as Defendant McLain, however, on October 31, 2024, Plaintiff filed a Joint Stipulation of Dismissal, dismissing all claims against Scott McLain with prejudice. (Docket No. 379).

No. 383 at 12). Plaintiff believes that the text messages that were deleted likely included instructions from Defendant McLain to Defendant Ebert regarding the planned assault on Plaintiff. *Id.* at 7.

I. Analysis

Plaintiff seeks sanctions pursuant to Fed. R. Civ. P. 37(e) and the inherent authority of the Court. Under Fed. R. Civ. P. 37(e):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Rule 37(e) thus requires the following three-part analysis:

> The first is to decide if the rule applies at all – that is, if a party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been 'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 494 (S.D.N.Y. 2022) (internal citations omitted); *see also Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) ("A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.") (citation omitted)).

For spoliation "sanctions to be appropriate, it is a necessary . . . condition that the sought-after evidence actually existed and was destroyed." *Farella v. City of New York,* Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); *see also La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022) (explaining that "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed"). Plaintiff argues Defendant Ebert and Defendant McLain communicated via text messages about Plaintiff on the date his alleged assaults occurred. (Docket No. 383 at 3). Defendants acknowledge that Defendants Ebert and McLain testified that they believed they exchanged text messages on the evening of September 15, 2021; however, phone records demonstrate that there were no such text communications. (Docket No. 394 at 6). Plaintiff combats this argument in his Reply noting that because both Defendants used iPhones, their messages would have been sent via "iMessage" which would not appear on the users' phone bills. (Docket No. 398 at 6).

"Admittedly, it is difficult to prove a document existed but has been destroyed; however, frequently a missing document will be referred to in other surviving documents or will be recalled during deposition." *Pinstripe, Inc. v. Manpower, Inc.*, No. 07-CV-620-GKF-PJC, 2009 WL 2252131, at *4 (N.D. Okla. July 29, 2009) (citation omitted). Since Defendants Ebert and McLain testified in deposition that they did communicate via text at least once on the day of the alleged

assaults, the Court will assume for the purpose of this Order that text messages in some form took place between Defendant Ebert and Defendant McLain on September 15, 2021.

Now the Court must determine whether Defendants had a duty to preserve the text messages in anticipation of litigation. Fed. R. Civ. P. 37(e) "does not create a . . . duty to preserve; instead, it looks to the common-law duty to preserve relevant information when litigation is reasonably foreseeable." *Hayes v. Owen*, No. 22-CV-00230-CVE-SH, 2023 WL 8543509, at *3 (N.D. Okla. Dec. 11, 2023) (quotations and citations omitted). "'While a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation, the duty to preserve relevant documents should require more than a mere possibility of litigation.'" *Id.* (quoting *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007)).

    a. Defendant Ebert

Defendant Ebert testified that he regularly deletes text messages on his phone. (Docket No. 394 at 1, Docket No. 336-5 at 21-22). Plaintiff presents no evidence indicating that Defendant Ebert knew or should have known at the time he deleted his text messages that litigation was reasonably foreseeable or even that the text messages in question were relevant to any potential litigation. At most, the evidence presented is that Defendant McLain texted Defendant Ebert to inquire about Plaintiff's arrival at the McCurtain County jail, to which Defendant Ebert replied that they "had to deploy the JPX." (Docket No. 336-5 at 8). After these messages, a phone call took place between them. *Id.* There is nothing presented to suggest that Defendant Ebert deleted his messages for any reason other than it is his normal practice to do so. There is also no evidence presented that his deletion of his messages was in anyway related to the pending litigation, as the deletion took place sometime between September 15, 2021, and September 24, 2021, and Plaintiff

did not send a tort claim notice until September 27, 2021.[2] (Docket No. 394 at 7). Accordingly, the Court finds that Defendant Ebert had no duty to preserve his text message.

Furthermore, Plaintiff's argument that Defendant Ebert deleted his text messages with the intent to deprive another party of the information in a "deliberate and willful" manner is likewise unpersuasive. "[C]ourts require evidence of intentional destruction or bad faith before a litigant is entitled to a spoliation instruction . . . Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) (quotation omitted). In this case, Defendant Ebert testified that it is his habit to delete his text messages. (Docket No. 336-5 at 21-22). Plaintiff believes this was done intentionally after learning that OSBI would be investigating (Docket No. 383 at 12); however, there is no evidence presented to support this belief. At most, Defendant Ebert was negligent in failing to preserve the text message evidence, which is insufficient to warrant the requested sanctions of default judgment, adverse inference instruction, or awards of costs and attorney's fees. "Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citing *Henning,* 530 F.3d at 1220). Since, as discussed above, there is no evidence presented that would have imposed a duty on Defendant Ebert to preserve his text messages, even lesser sanctions are not applicable.

Moreover, even if we proceed *in arguendo* and determine that Defendant Ebert should have taken reasonable steps to preserve his text messages in the anticipation or conduct of litigation, Plaintiff has not established prejudice from the lost data. As discussed above, the evidence shows

---

[2] It should further be noted that Defendant Ebert was not named in the tort claim notice, and therefore Defendant Ebert argues that he wasn't aware of the lawsuit until he was served on October 25, 2022, at which time his text messages were long since deleted. (*See* Docket No. 394 at 9).

6

testimony regarding what the text messages between Defendants Ebert and McLain said, specifically:

> . . . he had messaged me and asked if there was an inmate that had got brought in, and I messaged him and I said, "Yes, we had to deploy the JPX." He said, "Call me." So I called him to let him know what had happened instead of trying to text it all out.

(Docket No. 336-5 at 8).

Plaintiff has not presented any evidence that the text messages between Defendant Ebert and Defendant McLain contained any relevant information other than what has been testified to. Because Plaintiff cannot establish that the subject text messages were relevant beyond what was testified to, he cannot demonstrate he has been materially prejudiced by the alleged loss thereof. *See Henning,* 530 F.3d at 1219-20 (holding that without a showing of relevance, a plaintiff cannot show that he was prejudiced). Accordingly, Plaintiff is not entitled to a sanction or adverse inference relating to Defendant Ebert's deleted text messages.

      b.  Defendant McLain

Plaintiff further argues that Defendant McLain intentionally deleted his text messages prior to his interview with OSBI and intentionally destroyed his phone after receiving the tort claim notice. (Docket No. 383 at 6). In his deposition, Defendant McLain admitted the deletion of his text messages after he knew about the OSBI interviews "looks bad" but that he "went through [his] messages and just started deleting crap." (Docket No. 336-17 at 47). Under the Fed. R. Civ. P. 37(e) Defendant McLain should have preserved his electronically stored information ("ESI") because an OSBI investigation was happening, and Defendant McLain knew it was happening. *Id.* Based on the evidence, it is safe to assume that while Defendant McLain did not receive "unequivocal notice of impending litigation" he certainly knew there was "more than a mere possibility of litigation" now that an OSBI investigation was underway. *See Hayes,* 2023 WL

7

8543509, at *3 (quoting *Cache La Poudre*, 244 F.R.D. at 621). Courts have found a duty to preserve attaches in situations where "a party has knowledge that certain types of incidents tend to trigger litigation" *Id.* at 4; *see also Taylor v. New York*, 293 F.R.D. 601, 605-08 (S.D.N.Y. 2013) (jail officials knew plaintiff had been assaulted by another inmate—taking him straight from the holding cell to the emergency room; jail staff reviewed the footage of the assault and subsequent events and stated that all three hours of the footage was important to see; and the staff saved only some of the footage). Accordingly, Defendant McLain should have preserved his ESI relating to the events surrounding Plaintiff's arrest and incarceration at McCurtain County Jail.

Next, under the three-part analysis we must determine if Plaintiff has been prejudiced by the loss of the evidence. *Burlington*, 505 F.3d at 1032. As discussed above, there is no prejudice to Plaintiff for the deleted message between Defendant Ebert and Defendant McLain. Because the content of the message has been testified to, there is nothing that Plaintiff is missing despite the message having been deleted.

The third step for the Court to consider "– regardless of prejudice to any other party – is whether the destroying party acted with the intent to deprive another party of the information's use in the litigation." *In re Keurig*, 341 F.R.D. at 494 (internal citations omitted). Under the facts presented, there may be a level of intent on the part of Defendant McLain to deprive the OSBI of his messages or other information on his phone since the deletion of the messages occurred after he was aware an investigation was under way. Accordingly, Plaintiff's request for sanctions for Defendant McLain deleting his messages is granted. Therefore, the Court will presume that the lost information was unfavorable to Defendant McLain.

Plaintiff further argues that the evidence suggests that Defendant McLain intentionally destroyed his phone after learning that Plaintiff filed a governmental tort claim notice specifically

8

naming Defendant McLain. (Docket No. 383 at 12). The Court disagrees. Plaintiff argues that Defendant McLain's stepdaughter, Chelsea Fuller, "witnessed McLain intentionally break and destroy the cellular telephone he had used to communicate with Defendants Johnson and Ebert about Roper Harris on the evening of September 15, 2021." *Id.* at 6. However, the evidence Plaintiff cites to support this argument is not as unequivocal as Plaintiff leads the Court to believe. Chelsea Fuller testified during her deposition that despite telling others via Facebook that Defendant McLain lost his phone, the phone was never lost. (Docket No. 336-7 at 50). She stated that while Defendant McLain at some point said he was going to break his phone and throw it into a river, "he didn't [] [he] brought it home." *Id.* at 51. She further stated, " I don't know where it's at now. But he brought it home. He didn't throw it in the water or anything like that." *Id.* Shortly after this testimony, Ms. Fuller stated, not in response to any direct question, "I know he said he lost—he told them he lost his phone. And then he just randomly broke it because they wanted the messages off his phone." *Id.* However, Defendant McLain testified that he did not destroy his phone, but rather lost it when he left it on the bumper of his truck and drove away. (Docket No. 336-17 at 59). Defendant McLain also stated that all the information on his lost phone was stored in iCloud, and therefore would still be accessible. *Id.* At this time, Plaintiff has not presented enough evidence to support his allegation that Defendant McLain "intentionally destroyed his phone" to satisfy Fed. R. Civ. Pro. 37(e)(2). Accordingly, Plaintiff's request for sanctions or an adverse inference regarding Defendant McLain's phone is denied.

II.   Conclusion

Plaintiff's request for sanctions under Fed. R. Civ. P. 37 and the Court's inherent authority is partially granted and partially denied. As to Defendant Ebert, the Court finds that he did not have a duty to preserve his text messages, as there was no evidence that he knew or should have

known that litigation was reasonably foreseeable at the time the messages were deleted. Furthermore, Plaintiff failed to demonstrate any prejudice from the loss of the messages, and there was no showing of intentional destruction or bad faith. Therefore, Plaintiff is not entitled to any sanctions regarding Defendant Ebert's deleted text messages.

However, the Court finds that Defendant McLain had a duty to preserve his electronically stored information, as he was aware of the OSBI investigation and the possibility of litigation. Although Plaintiff has not shown prejudice from McLain's deletion of text messages, the Court determines that Defendant McLain may have acted with the intent to deprive Plaintiff of the use of the information in litigation, as he deleted the messages after being aware of the investigation. Therefore, the Court grants Plaintiff's request for sanctions regarding Defendant McLain's deleted messages and will presume that the lost information was unfavorable to Defendant McLain under Fed. R. Civ. P. 37(e)(2)(A) when analyzing the pending motions for summary judgment. The Court will not order a jury instruction at this time, nor will a default judgment be entered. As for Defendant McLain's alleged destruction of his phone, Plaintiff has not provided sufficient evidence to support the claim that Defendant McLain intentionally destroyed his phone to avoid producing relevant evidence. Therefore, Plaintiff's request for sanctions regarding Defendant McLain's phone is denied.

IT IS SO ORDERED this 12th day of March, 2025.

D. Edward Snow
United States Magistrate Judge